**IN THE COURT OF APPEALS OF IOWA**

No. 18-1480
Filed March 20, 2019

**IN THE INTEREST OF D.G. and G.G.,**
**Minor Children,**

**L.H., Mother,**
    Appellant,

**J.G., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Page County, Amy L. Zacharias, District Associate Judge.

Parents separately appeal from the termination of their parental rights to two of their children. **REVERSED AND REMANDED ON BOTH APPEALS.**

C. Kenneth Whitacre, Glenwood, for appellant mother.

Justin R. Wyatt, Glenwood, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Vicki R. Danley, Sidney, guardian ad litem for minor children.

Considered by Vogel, C.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, Judge.**

Parents separately appeal the termination of their parental rights to the youngest two of their five children, born in 2015 and 2017.

## I.    *Background Facts and Proceedings*

The department of human services intervened in 2015, following the birth of the parents' fourth child.[1]  The department instituted a safety plan based on concerns of drug use by the mother.  The fourth child stayed with relatives for approximately two months, then was formally removed from the parents' care in a separate proceeding.  He was ultimately reunited with his parents, and the district court closed the case.

Less than one year later, the youngest child was born with marijuana in his system.  The State filed a petition to have all five children adjudicated in need of assistance.

On the date of the scheduled adjudicatory hearing, the department drug-tested the parents and found they had methamphetamine in their systems.  The

---

[1] The father was not married to the mother, and his name did not appear on the birth certificate of the fourth child because he was absent when the certificate was signed. Nonetheless, he acknowledged he was the biological father of that child.  *See* Iowa Code § 232.2(39) (2018) (defining parent as "a biological or adoptive mother or father of a child; or a father whose paternity has been established by operation of law due to the individual's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child, by order of a court of competent jurisdiction, or by administrative order when authorized by state law" and not including "a mother or father whose parental rights have been terminated"); *cf. In re J.*C., 857 N.W.2d 495, 501–02 (Iowa 2015) (noting various definitions of "established father" and stating, "We will not expand or extend these statutes to include established fathers when the text of the statutes demonstrates the legislature's intent not to do so").  The State published notice of the termination petition to putative fathers the day before the termination hearing.  There is no indication that anyone stepped forward as a putative father in the intervening days and weeks between the two-day termination hearing and filing of the termination decision. The district court terminated the parental rights of unknown fathers.

district court granted the adjudication petition and ordered the children removed from parental care. The department placed the older three children with their maternal grandmother. The youngest two children, who are the subject of this appeal, ended up with their maternal great-aunt.

The parents continued to test positive for methamphetamine and marijuana for several months, but, in time, their drug use declined. Beginning four months before the termination hearing, they tested negative for methamphetamine. Although the father tested positive for marijuana after that date, a hair test administered in the month preceding the termination hearing tested negative for all substances, and the father testified he stopped using marijuana. The mother equivocated on whether she curtailed use of the drug. But the department caseworker agreed the department typically does not remove children for marijuana use by the parents. Both parents attended substance-abuse counseling and participated in other services designed to address their substance abuse. They also participated in several weekly visits with their children.

Ultimately, the State recommended against termination of parental rights to the older three children but petitioned to terminate parental rights to the youngest two children. Following a two-day termination hearing, the district court granted the termination petition pursuant to Iowa Code section 232.116(1)(e) and (h) (allowing the court to terminate parental rights where there is an absence of significant and meaningful contact or where the children cannot be returned to parental custody, respectively). This appeal followed.

## II.    *Father's Appeal*

The father (A) challenges the grounds for termination and (B) argues termination of his parental rights is not in the children's best interests, given the bond he shared with them and the department's acknowledgment that continued reunification efforts with the older three children was warranted.

We may affirm the termination decision if we find clear and convincing evidence to support either of the grounds cited by the district court. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  We will focus on section 232.116(1)(h).

Although the father made progress in addressing his addictions and testified he was ready to reunite with the children, his sobriety was of relatively recent vintage and had yet to be tested with extended unsupervised and overnight visits.  On our de novo review, we agree with the department caseworker's testimony that the children could not be returned to the father's custody as of the date of the termination hearing.  We turn to the father's "best-interests" argument, which actually implicates certain exceptions to termination.  *See In re D.W.*, 791 N.W.2d 703, 706, 708 (Iowa 2010).

Two statutory provisions bear on his argument: Iowa Code section 232.116(3)(a) and (c).  The first states a court need not terminate parental rights if "[a] relative has legal custody of the child."  Iowa Code § 232.116(3)(a).  The second states the court need not terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  *Id.* at § 232.116(3)(c).  "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save

the parent-child relationship.'" *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted). We elect to focus on section 232.116(3)(c), the closeness of the parent-child relationship.

As noted, all the children lived with relatives—the older three with their grandmother and the younger two with their great-aunt. The department reported, "All of the kids are loved by immediate and extended family members."

The department caseworker conceded there was no anticipated termination of parental rights to the older three children because the parents participated in reunification services for four months. Those services included multiple weekly visits with all five children—some supervised and others unsupervised—often at the relatives' homes and with department approval. The department caseworker recognized the significant role the relatives played, testifying to the possibility of using them as a greater support system for the parents. With the assistance of the relatives, the bond between the parents and all five children flourished.

Professionals working with the family conceded as much. In a report filed with the court shortly before the termination hearing, the department reported, "All of the kids are bonded to [the father] as evidenced by the kids running to [him] when he arrives at visits." The department caseworker also testified that the bond between the youngest two children and the father increased in the two months preceding the termination hearing.

The service provider who supervised certain visits agreed, testifying interactions went "very well" and she saw a much stronger bond between the parents and youngest two children in the three to four weeks preceding the

termination hearing. In her words, the children "both jump right out of my van and towards their mom and dad."

It is also worth mentioning the bond among the five children. The caseworker testified to an apparent connection between the two youngest children and the oldest child. Although the middle two children tended to play on their own during visits, there was scant, if any, indication of alienation among the siblings. To the contrary, the department reported "all of the kids are bonded with each another and enjoy physical activities with one another."

We recognize the statutory time frames for termination must be viewed with a sense of urgency, and those deadlines are shorter for the youngest two children than they are for the older ones. *Compare* Iowa Code § 232.116(1)(h), *with id.* § 232.116(1)(f); *cf. In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). But the statutory exception set forth in section 232.116(3)(c) provides a means to avoid termination even when the grounds for termination have been met, including the deadlines for termination within those grounds. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting the factors come into play "once the State has proven a ground for termination.")

We reverse the termination decision as to the father on the basis of the statutory exception to termination set forth in section 232.116(3)(c).

### III. Mother's Appeal

The mother challenges the evidence supporting termination under Iowa Code section 232.116(1)(e) (absence of significant and meaningful contact) but not under section 232.116(1)(h) (child cannot be returned to parental custody). In an attachment to her appeal petition, she also argues the bond she shared with

the children and the bond the children shared with each other militated against termination.

Because the mother failed to challenge one of the grounds for termination, we affirm on that ground. *In re S.R.*, 600 N.W.2d at 64. The State proved termination was warranted under section 232.116(1)(h).

With respect to the bond, our discussion above applies equally to the mother. She participated in visits and actively engaged with all five children. We reverse the termination decision as to the mother based on the statutory exception set forth in section 232.116(3)(c).

## IV. *Disposition*

We reverse the termination of the parents' rights to the youngest two children. We remand for continued reunification services for the parents and all five children.

**REVERSED AND REMANDED ON BOTH APPEALS.**